Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 14, 2020

**2020 CO 70**

**No. 19SC98,** *Fisher v. People*—Criminal Procedure—Charging Instruments —
**Amendments to the Information.**

The supreme court considers whether an amendment to the information

after trial had begun was permissible under Crim. P. 7(e).  Specifically, the

supreme court considers whether the amendment in this case that expanded the

date range of the charged offenses prejudiced the defendant's substantial right to

prepare and present his defense.  The supreme court holds that, while expanding

the date range does not automatically prejudice a defendant's substantial rights,

under the totality of the circumstances of this case, the mid-trial amendment here

prejudiced Fisher's substantial right to fully prepare and present his alibi defense.

Accordingly, the supreme court reverses the judgment of the court of appeals,

vacates Fisher's convictions, and remands for a new trial.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 70

### Supreme Court Case No. 19SC98
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 17CA132

### Petitioner:

Gregory Brad Fisher,

v.

### Respondent:

The People of the State of Colorado.

### Judgment Reversed
*en banc*
September 14, 2020

**Attorneys for Petitioner:**
McClintock Law Firm, LLC
Elizabeth A. McClintock
    *Colorado Springs, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Erin K. Grundy, Senior Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Criminal Defense Bar:**
Squire Patton Boggs (US) LLP
Brent R. Owen
Jacob Davis
        *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1     On the third day of Gregory Fisher's trial for five counts of sexual assault on a child, and after the prosecution had presented the majority of its case, the prosecution moved to amend the date range of the charged offenses. The proposed amendment expanded the date range for the charged offenses by approximately six weeks from the original complaint and information. The trial court granted the motion over defense counsel's objection. The jury ultimately found Fisher guilty on all five counts.

¶2     Fisher appealed, contending that the amendment prejudiced his right to present his defense. A split division of the court of appeals disagreed and affirmed his convictions, holding that the amendment was not one of substance and did not prejudice Fisher's substantial rights to conduct his defense. *People v. Fisher*, No. 17CA132, ¶ 35 (Nov. 29, 2018).

¶3     We granted certiorari to determine "[w]hether an amendment to an information expanding the date range after trial began is permissible under the due process clauses of the U.S. and Colorado Constitutions and Crim. P. 7(e)." Crim. P. 7(e) permits a mid-trial amendment only if the amendment (1) is one of form, (2) does not charge an additional or different offense, and (3) does not prejudice the defendant's substantial rights. We hold that, while expanding the date range does not automatically prejudice a defendant's substantial rights, under the totality of the circumstances of this case, the mid-trial amendment here

3

prejudiced Fisher's substantial right to fully prepare and present his alibi defense. Accordingly, we reverse the judgment of the court of appeals, vacate Fisher's convictions, and remand for a new trial.

## I. Facts and Procedural History

¶4 In 2015, Z.F., age twelve, told her mother that her father, Fisher, had sexually assaulted her on numerous occasions. In an interview with police, Z.F. told a forensic investigator that the earliest assault occurred either between her birthday (November 15, 2014) and Thanksgiving (November 27, 2014), or sometime before Halloween, and that the last incident occurred sometime before her father was deployed overseas in March 2015. The People charged Fisher with five counts of sexual assault on a child by one in a position of trust as a pattern of abuse.[1] Each count in the complaint and information charging Fisher stated that the alleged incidents had occurred "[b]etween and including November 16, 2014 and March 29, 2015." Fisher's defense was, in part, that he had an alibi for some of the dates in the specified date range, including the first alleged offense.

¶5 At trial, Z.F. was the first witness for the prosecution. Her testimony regarding the date of the first alleged offense changed from what she had told the

---

[1] The People also charged Fisher with five counts of sexual assault on a child by one in a position of trust (no pattern) but dismissed these counts prior to trial.

4

forensic investigator. Specifically, she testified that the first assault occurred at the end of that school year (May 2014). But on cross-examination, Z.F. said that she had no reason to disagree with her prior statement to the investigator that the first assault occurred after her birthday on November 15, 2014, but before Thanksgiving. Later that day, the prosecution played the recording from Z.F.'s forensic interview, in which she stated that the first assault occurred either between her birthday and Thanksgiving or before Halloween. That same day, the prosecution called Z.F.'s mother, who testified that Fisher had been gone for military training starting sometime in October 2014 and returned approximately on Thanksgiving.

¶6 On the morning of the third day of trial, after it had called five of its six witnesses, the prosecution moved to amend the information to expand the starting date of the charging range from November 16, 2014, to October 1, 2014. The prosecution stated that the victim had "testified it was October and disagrees with the statement she gave to [the forensic examiner]. So the People are moving to amend [the information] back to October 2014." Defense counsel objected, arguing that permitting an amendment to the date range prejudiced a substantial right of Fisher's:

> We have a right to prepare for defense. We have a right to bring in witnesses. We have a right to prepare our case based on what's in front of us. What was in front of us was a date of November 16th. Now we are going back an entire month. We are sitting here at the

5

close of the case. I don't have any time to contact any witnesses, do any investigation for that time period prior to that. I'm left basically ambushed and so I believe that it does prejudice a substantial right of my client to his defense.

[W]hen we are preparing for trial, I have got an information that says November 16th. And that's what I prepped. And I just believe that's a substantial right for the defendant. And it severely handicaps his defense and constitutional rights.

¶7 The trial court initially indicated that it was "not necessarily inclined to grant" the amendment because "it seems . . . this is a significant issue in the case." The court went on to explain that "[t]he opening statement was framed upon a date timeline. And to now at almost the end of the evidence move to amend the date timeline strikes me as significant and quite prejudicial." However, after hearing arguments, the court reversed course and granted the prosecution's request to amend the information, finding that the change was "only procedural and does not impact the substantive rights of defense available to Mr. Fisher." Accordingly, the starting period of the alleged assaults in the information was expanded by roughly six weeks, from November 16, 2014, to October 1, 2014.

¶8 Even with the amendment expanding the dates of the charges, Fisher still pursued his alibi defense, testifying that he was in California for training from late October until Thanksgiving day. He did not present an alibi for early or mid-October. Ultimately, the jury rejected his defense and found him guilty on all five counts.

6

¶9 Fisher appealed, arguing that the amendment impeded his ability to prepare and present a defense for the extended date range. A split division of the court of appeals disagreed and affirmed his convictions. *Fisher*, ¶¶ 1, 35. The majority first explained that Fisher's alibi defense was "only a mildly viable defense to any of the assaults" because it "contradicted some, but not all, of the incidents." *Id.* at ¶¶ 23–25. It then reasoned that Fisher's "alibi defense was not prejudiced by the amendment to the complaint because the change included the dates of his alibi and did not impair his ability to present his alibi defense." *Id.* at ¶ 27. It also noted that the exact date of the offense is not an essential element to the charge of sexual assault on a child. *Id.* at ¶ 28. The majority thus concluded that "[e]xpanding the date range did not alter the offense or require a change in his defense strategy." *Id.* at ¶ 31. Therefore, it held that "the amendment was not one of substance" and that it "did not prejudice [Fisher's] substantial right to conduct his defense." *Id.* at ¶ 35.

¶10 Judge Berger dissented. He argued that the proper question under Crim. P. 7(e) is "*whether* there was prejudice" to a defendant's substantial right, "not *how much* prejudice the defendant suffered." *Fisher*, ¶ 75 (Berger, J., dissenting). Judge Berger explained that while the mid-trial amendment did not totally destroy Fisher's alibi defense, it still adversely affected his ability to prepare and present his defense. *Id.* at ¶ 74. Accordingly, applying the plain language of Crim. P. 7(e),

Judge Berger concluded that this adverse effect constituted prejudice to Fisher's substantial right to present a defense, and he would have granted Fisher a new trial. *Id.* at ¶ 75.

¶11 We granted certiorari and now reverse.

## II. Analysis

¶12 We begin by outlining the appropriate standard of review. Next, we detail the relevant law concerning amendments to the information under Crim. P. 7(e) and explain the standard for determining whether such an amendment prejudices a defendant's substantial rights. We then apply that law to the facts and hold that, while expanding a date range does not automatically prejudice a defendant's substantial rights, under the totality of the circumstances of this case, the mid-trial amendment here prejudiced Fisher's substantial right to fully prepare and present his alibi defense. Accordingly, we reverse the judgment of the court of appeals, vacate Fisher's convictions, and remand for a new trial.

## A. Standard of Review

¶13 We review a trial court's decision to allow the prosecution to amend an information for an abuse of discretion. *People v. Washam*, 2018 CO 19, ¶ 13, 413 P.3d 1261, 1264. A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when the trial court misapplies or misconstrues the law. *People v. Ehrnstein*, 2018 CO 40, ¶ 13, 417 P.3d 813, 816.

8

## B. Crim. P. 7(e)

¶14 An information is a charging document that advises a defendant of the charges against him. *Washam*, ¶ 14, 413 P.3d at 1264. An information serves two interests "of a constitutional dimension: (1) it provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense so that the defendant can adequately defend him or herself; and (2) it protects the defendant from further prosecution for the same offense." *People v. Williams*, 984 P.2d 56, 60 (Colo. 1999). When an information is defective, it may be cured by timely amendment. *Washam*, ¶ 15, 413 P.3d at 1264.

¶15 Crim. P. 7(e) governs how and when such an amendment may take place. In its entirety, that rule provides:

> The court may permit an information to be amended as to form or substance at any time prior to trial; *the court may permit it to be amended as to form at any time before the verdict* or finding if no additional or different offense is charged and *if substantial rights of the defendant are not prejudiced.*

(Emphases added.) Unpacking Crim. P. 7(e), the prosecution may amend the information as to form or substance "at any time prior to trial." However, in instances where the prosecution seeks to amend the information after trial has begun—as was the case here—Crim. P. 7(e) dictates that it may do so only if the amendment "(1) was one of form, (2) did not charge an additional or different

9

offense, and (3) did not prejudice [the defendant's] substantial rights." *Washam*, ¶ 16, 413 P.3d at 1264. All three conditions must be satisfied.

¶16 In this case, we focus our analysis on the third condition: whether the mid-trial amendment prejudiced Fisher's substantial rights. If it did, then we need not decide whether the amendment was one of form or substance, nor whether it charged an additional or different offense, and we will thus limit out analysis accordingly.[2]

¶17 When conducting this analysis, it is important to recognize that, as Judge Berger pointed out in his dissent, Crim. P. 7(e) does not ask *how much* the defendant has been prejudiced. Rather, the rule asks *whether* a defendant's substantial rights have been prejudiced at all. Recognizing the difference between those two questions is critical. Asking how much the defendant has been prejudiced assumes that some prejudice to the defendant's substantial rights is acceptable under Crim. P. 7(e), whereas asking if the defendant's substantial rights have been prejudiced recognizes that any prejudice to the defendant's substantial rights forecloses an amendment to the information during trial. Crim. P. 7(e)'s

---

[2] The court of appeals concluded that the amendment was one of form, not substance, partly because the exact date of the offense was not an essential element of the charges. *Fisher*, ¶¶ 28, 35. Because we focus on whether the amendment affected Fisher's substantial rights, we express no opinion on this issue.

focus on whether prejudice to the defendant's substantial rights occurred at all makes sense given that it is difficult, if not impossible, to know how much a mid-trial amendment to the information under certain facts—like those presented here—ultimately prejudiced the defendant. Accordingly, the amount to which the right was prejudiced is not relevant to the determination under Crim. P. 7(e).

¶18 Determining whether a defendant's substantial rights have been prejudiced necessarily involves a case-by-case examination, and courts must look at the totality of the circumstances. *See Washam*, ¶¶ 30–32, 413 P.3d at 1266–67 (looking at several non-exhaustive factors to conclude that an amendment narrowing the date range in the information did not prejudice the defendant's substantial rights). Factors relevant to the inquiry include but are not limited to: (1) the theory of the defense, *id.* at ¶ 30, 413 P.3d at 1266 (looking, in part, at the defendant's defense strategy and whether his ability to prepare or present that defense was impaired); (2) the timing of the amendment, *Cervantes v. People*, 715 P.2d 783, 788 (Colo. 1986) (citing the fact that neither side had yet presented evidence as one factor supporting the decision to allow the amendment); and (3) whether the amendment requires a different defense strategy, *see People v. Metcalf*, 926 P.2d 133, 140 (Colo. App. 1996) (explaining that "the amendment did not . . . require a different defense strategy from the one the defendant had chosen under the initial information"). No single factor is dispositive, and courts should "look to the

11

surrounding circumstances" in the case to determine whether prejudice has resulted. *Williams*, 984 P.2d at 64.

¶19 With this framework in mind, we now turn to the question of whether the amendment in this case was permissible.

## C. The Amendment Prejudiced Fisher's Substantial Rights

¶20 A defendant's right to prepare and present a defense to a criminal charge qualifies as a "substantial right" under Crim. P. 7(e). *See People v. Garcia*, 940 P.2d 357, 362 (Colo. 1997) (noting that the information must "give [the defendant] a fair and adequate opportunity to prepare his defense, and . . . ensure that [the defendant] is not taken by surprise because of evidence offered at the time of trial"); s*ee also Metcalf*, 926 P.2d at 139 (explaining that the "purposes served by a criminal information are" in part "to enable the defendant to prepare a defense"). No one here disputes that. Therefore, we need to examine whether the amendment here prejudiced Fisher's right to prepare and present a defense. Fisher argues that it did. He contends that the amendment to the information prejudiced his substantial rights because expanding the date range on the third day of trial adversely affected his ability to prepare and present his alibi defense. Conversely, the People contend that the amendment was permissible, reasoning that Fisher was still able to present his partial alibi, the amendment did not totally destroy the defense, and Fisher's alibi defense was only mildly viable anyway. In

12

so doing, the People, like the majority in the division, focus on the extent of the prejudice and argue that the amendment was permissible under Crim. P. 7(e) because it did not substantially prejudice Fisher.

¶21 To determine if the expansion of the dates prejudiced Fisher's substantial right to prepare and present a defense, we begin by recognizing that expanding a date range alone does not automatically prejudice a defendant's ability to prepare or present a defense. But we also recognize that the type of defense asserted is a factor that must be considered to make that determination. Here, Fisher asserted that he had an alibi for part of the date range in the original information. Therefore, the dates of the alleged assaults were a significant issue in this case. Furthermore, prior to the amendment, Fisher's alibi placed him out of the state for the first alleged assault, making the start of the date range even more important to his defense. Recall that the date range was November 16, 2014, to March 29, 2015, and the prosecution's theory was that the first assault occurred after November 16 but before Thanksgiving (November 27). Based on this information, Fisher came to trial prepared with an alibi defense for part of the specified date range—namely, that he could not have committed the first alleged assault because he was out of the state from late October until Thanksgiving Day. As Judge Berger noted, had the trial court denied the amendment and the jury accepted Fisher's alibi, the result "would have warranted an acquittal on count one." *Fisher*, ¶ 65 (Berger, J.,

dissenting). Ultimately, we cannot know what the jury would have decided had the amendment not occurred. What we do know, however, is that the amendment changed the date range from one where the first alleged assault fell squarely within Fisher's alibi timeline (November 16 through November 27) to one where it fell partly outside that timeline (October 1 through November 27). Therefore, the amendment plainly diminished the viability of Fisher's alibi defense for the first count. Had Fisher been timely advised of the expanded date range, he surely would have investigated whether he had additional alibis or another viable defense for those dates.[3] Thus, the amendment impaired his ability to prepare his defense.

¶22    The timing of the amendment—our second factor—is also significant. It occurred on the third day of trial, near the close of the prosecution's case; the

---

[3] The People argue, in part, that expanding the timeline was permissible here because Fisher had access to all of the relevant material through discovery, such that he would have known that the victim had stated in her forensic interview that the first incident might have occurred before the date specified in the information. We are not persuaded. To accept this argument, would—in effect—mean that the dates charged in the information are irrelevant as long as the defendant has access to all of the information in discovery. The People elected the dates in the information and Fisher was entitled to rely on that decision. Accordingly, we reject the People's suggestion that an erroneous mid-trial amendment to the information under these facts is rectified by the fact that the defendant had access to all of the relevant material in discovery.

prosecution only had one more witness to call before it rested. Not only did expanding the timeline this late in the trial prevent Fisher from finding witnesses or marshaling evidence to dispute the expanded timeframe of the charges, it also prevented him from adequately cross-examining the prosecution's witnesses as he understandably limited his examination to the date range in the original complaint. Indeed, integral to Fisher's defense was that Z.F. lacked credibility. Arguably, if the jury had determined that the first alleged assault did not occur— i.e., that Z.F.'s testimony was not credible—then that conclusion had the potential to influence the verdict on the remaining counts. However, the prosecution moved to amend the dates after Z.F. testified and after Fisher had cross-examined her about the first alleged assault. Hence, expanding the timeline, in effect, not only diminished the viability of Fisher's alibi defense but the timing of the amendment also weakened his ability to call into question Z.F.'s credibility overall. As a result, he did not have the opportunity, or frankly even the need, to try to cast doubt on the expanded date range during the prosecution's case-in-chief.

¶23    Of course, the mere fact that an amendment occurs during trial does not necessarily mean that it prejudices the defendant's right to prepare and present his defense. Indeed, we recently held in *Washam* that, under the particular facts of that case, a mid-trial amendment was not reversible error. ¶ 32, 413 P.3d at 1267. In *Washam*, after the jury was sworn but before the presentation of any evidence,

the prosecution moved to amend the information to *narrow* the date range for the charged offenses. *Id.* at ¶ 7, 413 P.3d at 1263. In holding that the amendment had not prejudiced Washam's substantial rights, we noted that he "was always notified of the time frame in the case against him" and that narrowing the date range did not impede his ability to prepare or present his defense. *Id.* at ¶ 30, 413 P.3d at 1266.

¶24 The opposite is true here. In this case, the prosecution moved to *expand* the date range for the charged offenses. Hence, unlike in *Washam*, Fisher was not "always notified of the time frame in the case against him," which is particularly significant given that Fisher's defense was that he had an alibi for the earliest dates in the original information. Accordingly, the timing of the amendment, coupled with the fact that it negatively affected Fisher's alibi defense, prejudiced Fisher's substantial right to present and prepare his defense.[4]

¶25 In sum, Crim P. 7(e) does not ask the court to consider *how much* prejudice Fisher suffered, but rather asks *whether* the substantial rights of Fisher were prejudiced. Here, based on the totality of the circumstances, the mid-trial

---

[4] We reject the People's suggestion that the fact that Fisher did not request a continuance after the trial court permitted the amendment somehow changes the inquiry under Crim. P. 7(e).

amendment that expanded the date range adversely affected Fisher's substantial right to prepare and present his alibi defense. That adverse effect constitutes prejudice to Fisher's substantial rights under Crim. P. 7(e). The trial court, therefore, abused its discretion in permitting this mid-trial amendment. And because this error "affected the fairness of the trial proceedings" and "impairs the reliability of [the] conviction," this abuse of discretion constitutes reversible error. *People v. Jefferson*, 2017 CO 35, ¶ 26, 393 P.3d 494, 499; *see also DeBella v. People*, 233 P.3d 664, 667 (Colo. 2010).

## III. Conclusion

¶26    For the aforementioned reasons, we reverse the judgment of the court of appeals, vacate Fisher's convictions, and remand for a new trial.